UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS DISPOSAL SYSTEMS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:18-cv-00701 |
| | § | |
| FCCI INSURANCE COMPANY AND | § | |
| ARCH SPECIALTY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Texas Disposal Systems, Inc. ("TDS") files this Original Complaint against Defendants FCCI Insurance Company ("FCCI") and Arch Specialty Insurance Company ("Arch") as follows:

## I.  PRELIMINARY STATEMENT

1.1    Among other damages, TDS seeks to recover unpaid defense costs and expenses that should have been paid by FCCI and/or Arch pursuant to their respective insurance policies issued to TDS. FCCI, the primary insurer, initially defended TDS in the lawsuit brought by Brandon Gardner arising out of the tragic death of his minor child, styled *Brandon Gardner v. Texas Disposal Systems, Inc.*, Cause No. D-1-GN-16-003247, in the 419th Judicial District Court of Travis County, Texas (the "Gardner Lawsuit"). FCCI also defended the lawsuit brought by the child's mother, the child's estate and her minor siblings, styled *Leah K. Bullock, individually and as Representative of the Estate of B.B.G. and as next friend of B.T.G. and K.I., minors v. Texas Disposal Systems, Inc. and Carl Weige,* Cause No. D-1-GN-16-03065, in the 345th Judicial

District Court, Travis County, Texas (the "Bullock Lawsuit"). The Gardner Lawsuit and the Bullock Lawsuit eventually were consolidated ("the Lawsuit"). Although FCCI defended its insureds in the Lawsuit and ultimately exhausted its policy limit in settlement of a portion of the claims, FCCI prematurely terminated its duty to defend, leaving TDS to pay its own defense costs and expenses before the Lawsuit ultimately was resolved.

1.2     In addition, Arch, the only unexhausted excess insurer in TDS' insurance tower, indicated to TDS on multiple occasions that it would assume TDS' defense, and it confirmed its assumption of the defense through its actions, conduct, and written correspondence. Nevertheless, when it came time for Arch to make good on its promises, Arch refused to defend, also leaving TDS to fend for itself in the defense of the Lawsuit, which remains ongoing.

1.3     TDS sues FCCI and Arch for breach of contract to recover the unpaid defense expenses and costs it has paid, as well as to recover its reasonable and necessary attorneys' fees. In addition, TDS seeks a judgment against Arch declaring that it has an ongoing obligation to defend the Lawsuit outside of its policy limit until its policy limit is exhausted, in accordance with the express language of its policy.

## II. PARTIES

2.1     Plaintiff Texas Disposal Systems, Inc., is a Texas Corporation with its principal place of business in Travis County, Texas.

2.2     Defendant FCCI Insurance Company is a Florida corporation, with its principal place of business in Sarasota, Florida. FCCI Insurance Company may be served through its registered agent, Registered Agent Solutions, Inc., 1701 Directors Blvd., Suite 300, Austin, Texas, 78744-1044.

2.3     Defendant Arch Specialty Insurance Company is a Missouri corporation with its principal place of business in Jersey City, New Jersey. Arch Specialty Insurance Company may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-4284.

2.4     Both FCCI and Arch are authorized to conduct business in the State of Texas.

### III.  JURISDICTION

6.1     Plaintiff and each defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court therefore has jurisdiction over the lawsuit pursuant to 28 U.S.C. §1332(a).

### IV.  VENUE

4.1     Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to TDS' claims occurred in this district.

### V.  CONDITIONS PRECEDENT

5.1     All conditions precedent set forth in the applicable insurance contracts have been performed or have occurred, as required by Fed. R. Civ. P. 9(c).

### VI.  FACTS

6.1     Leah K. Bullock filed the Bullock Lawsuit on July 27, 2016, alleging causes of action against Carl Weige ("Weige") for negligence and negligence, *per se*, and against TDS for direct negligence and vicarious liability for the negligence of Weige. The Bullock Lawsuit also averred gross negligence against both defendants and sought multiple measures of damages. Leah K. Bullock filed her second amended petition on June 2, 2017, amplifying the facts against TDS and Weige, but maintaining essentially the same causes of action and claims for damages.

6.2     Brandon Gardner filed the Gardner Lawsuit on July 22, 2016, alleging causes of action against TDS for negligence, negligence *per se*, and gross negligence, and seeking various

measures of damages. He amended his petition multiple times, culminating in his fourth amended petition, filed on January 15, 2018, containing claims against TDS for negligence, negligence *per se*, injury to a child under Texas Penal Code §22.04, and gross negligence. Gardner sought in excess of $100,000,000.00 for, among other things, physical pain and suffering, mental anguish, physical impairment, loss of consortium, punitive damages, costs and interest.

6.3     TDS purchased insurance coverage to protect it against the Bullock Lawsuit and the Gardner Lawsuit in the following layers:

        a.     The primary Commercial Auto Policy No. CA 0029013, issued by FCCI ("FCCI Policy");

        b.     The first layer Commercial Excess Policy No. FF012290-01, issued by Rockhill Insurance Company ("Rockhill Policy");

        c.     The second layer Commercial Umbrella Policy No. 1000031033-06, issued by Liberty International Underwriters ("the Liberty Policy"); and

        d.     The third layer Excess Third Party Liability Policy No. UXP005813401, issued by Arch ("the Arch Policy").

6.4     All of the policies were in effect from February 1, 2016 to February 1, 2017, when the underlying accident occurred. In addition, TDS had reason to believe that all of the excess policies followed form to the FCCI Policy.

## VII.  POLICIES AT ISSUE

**A.     The FCCI Policy**

7.1     The FCCI Policy contains the following insuring agreement and agreement to provide a defense outside of the limits of liability:

A.      Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

. . .

We have the right and duty to defend an "insured" against a "suit" asking for such damages . . . ." . . . Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

7.2     TDS timely notified FCCI of the Bullock Lawsuit and the Gardner Lawsuit, and FCCI agreed to defend under a reservation of rights. FCCI continued to defend TDS under a reservation of rights even after the Bullock Lawsuit and the Gardner Lawsuit were consolidated.

7.3     Arch arranged for all parties to mediate the Lawsuit on November 27, 2017. At that mediation, FCCI, Rockhill, Liberty and Arch agreed to settle the claims asserted by Leah Kaye Bullock, individually, and as representative of the estate of B. B. G., and as next friend of B. T. G. and K. L., minors. Brandon Gardner did not agree to settle at mediation.

7.4     Defense counsel appointed by FCCI drafted the settlement agreement. As a condition to settlement, the Bullock plaintiffs agreed not only to dismiss the lawsuit, but they also agreed to "provide the Released Parties with a certified copy of the Court's order approving the compromise of" their claims, because a minor prove-up was necessary to approve the settlement as to the minor plaintiffs.

7.5     Pursuant to the language in the settlement agreement, the settlement with the Bullock plaintiffs was not culminated until February 21, 2018, when the Bullock plaintiffs filed a Notice of Nonsuit, dismissing all of their claims against TDS and Weige with prejudice.

7.6     FCCI stopped defending TDS and Weige on or around December 28, 2017, before its duty to defend ended. Accordingly, FCCI breached its insurance contract with TDS.

**B.**     **The Arch Policy**

7.7     The Arch Policy provides the following provisions:

**I.**     **INSURING AGREEMENTS**

We will pay on behalf of the **insured,** except as otherwise stated in this policy, those amounts of **loss** for which coverage is provided under the definitions, terms, conditions, limitations and exclusions of the **controlling underlying insurance** in effect at the inception of this policy and which exceeds the total Limits of Liability of **underlying insurance** as stated in Items 3.a. and 3.b. of Schedule A – Schedule of Underlying Insurance of this policy. The amount we will pay for **Loss** is limited as provided under Section **II. LIMITS OF INSURANCE**.

\* \* \*

**II.**     **LIMITS OF INSURANCE**

h.     If defense expenses are included within the limit of liability of any **underlying insurance**, then any such defense expense we incur, in accordance with Section **III. DEFENSE,** shall reduce the Limit of Insurance of this policy.

If defense expenses of none of the **underlying insurance** reduce the limit of liability provided by those policies, then any such defense expense we incur, in accordance with Section **III. DEFENSE**, shall not reduce the Limit of Insurance of this policy.

\* \* \*

**"Loss"** means amounts paid to settle a claim or suit, or satisfy a judgment, for which the **insured** is legally liable. The amounts that are payable by us are subject to deductions for subrogation, salvages, and any other recoveries made or that are available to an **insured**.

\* \* \*

**"Underlying insurance"** means all policies and the Limits of Liability listed in Items 3.a. and 3.b. of Schedule A – Schedule of Underlying Insurance of this policy.

7.8     With respect to defense, the Arch Policy states:

      **III.**    **DEFENSE**

        a.    We will not be required to assume charge of the investigation or defense of any claim or any suit against an **insured**.

        b.    We will have the right, but not the duty, to be associated with the **insured** or the underlying insurers or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

        c.    If the total Limits of Liability of **underlying insurance** as stated in Items 3.a. and 3.b. of Schedule A – Schedule of Underlying Insurance of this policy are exhausted solely by payment of **loss** (including any defense expenses that reduce the limit of liability of the **underlying insurance**) we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to payment under this policy. We may, however, withdraw from the defense of any suit or tender the continued defense to you if our applicable Limits of Insurance stated in Item 2 of the Declarations is exhausted by payment of **loss** (including any defense expenses that reduce the Limit of Insurance in accordance with Section **II. LIMITS OF INSURANCE**, Paragraph h. above).

            If we exercise our rights under Paragraphs **III.b.** or **III.c.** above, we will do so at our own expense, subject to Section **II. LIMITS OF INSURANCE**, Paragraph h. above.

Condition VI.c.5 of the Arch Policy provides:

        5.    No **insured** will, except at the **insured's** own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

7.9     Item **3.a. CONTROLLING UNDERLYING INSURANCE**, includes only the Liberty Policy. Item **3.b. OTHER UNDERLYING INSURANCE**, is left blank. Because the Liberty Policy is the only underlying insurance listed in Schedule A, and because it provides that all expenses Liberty incurs in the "investigation of any 'claim' or the defense of any 'suit' are in

addition to [Liberty's] Limits of Insurance," any defense expense Arch incurs will not reduce the limit of insurance of the Arch Policy.

7.10    Item 2 of the Declarations of the Arch Policy provides that the per occurrence limit of liability of the policy is $5,000,000.00, and $5,000,000.00 in the aggregate.

7.11    The Arch Policy contains the following endorsement:

### PUNITIVE DAMAGES EXCLUSION

It is agreed that regardless of whether or not coverage is afforded in the **controlling underlying insurance**, this policy does not apply to any claim, suit, demand or **loss**, cost or expense for punitive damages, treble damages, fines, penalties, exemplary or multiple damage.

### VIII.  ARCH'S ASSUMPTION OF THE DEFENSE

8.1    On or about July 13, 2016, Arch acknowledged receipt of the claim, informed TDS of the identity of the claim handler, stated it was evaluating coverage and included a blanket reservation of rights under its Policy.

8.2    Approximately one year later, on July 7, 2017, Arch sent a letter to the claim professional assigned by FCCI to handle the Lawsuit, advising him that Arch was "fully supportive of the measures recommended and, in the case of retention of [former Chief Justice Wallace Jefferson's law firm] taken by TDS." In the letter, Arch also discouraged FCCI and Rockhill from tendering their limits of insurance, stating: "the obligation to provide a full and complete defense to TDS presently remains on FCCI and State Auto [Rockhill], and in light of the seriousness of the Plaintiffs' claims, the requests from TDS and its defense counsel referenced above appear to be reasonable and necessary." She encouraged both FCCI and Rockhill to accept counsel's requests "without further delay so that TDS may retain a jury consultant and arrange a mock trial with sufficient time before trial."

8.3     On August 14, 2017, more than one year after acknowledging receipt of the claim and one month after approving the above-referenced defense expenses, Arch informed its insured that its Policy does not cover punitive damages.

8.4     At mediation of the lawsuit on November 28, 2017, TDS' insurers settled with the Bullock plaintiffs. Culmination of the settlement would exhaust the FCCI, Rockhill and Liberty policies, and would partially deplete the Arch Policy, leaving only part of that policy's proceeds to defend and settle the Gardner portion of the Lawsuit.

8.5     By the terms of the Arch Policy, TDS had no right to object to the settlement and no right to negotiate and settle the case without Arch's permission.

8.6     At mediation, TDS' General Counsel and Senior Legal Counsel both expressed concern to Arch's claim representative about the reasonableness of the Bullock settlement for such a large amount. They also expressed concern that a settlement at that level might not leave sufficient policy proceeds under the Arch Policy to settle with Gardner.

8.7     Furthermore, apparently recognizing that the FCCI policy would soon be exhausted, David Merkley of the Germer Law Firm, TDS' defense counsel appointed by FCCI, expressed to the Arch claim representative his willingness to turn the defense over to different counsel of Arch's choosing or to otherwise take a back seat to another co-counsel, as Arch might see fit. The Arch claim representative did not take Mr. Merkley up on his offer, indicating instead that it would not be necessary to substitute counsel at this point in the litigation. Later at the mediation, the Arch claim representative reiterated that Mr. Merkley would be the designated trial counsel when she asked him whether, "as trial counsel in this case," he would prefer to try the case against Gardner and his lawyer, or against Bullock and her lawyer, if forced to choose.

8.8     During a December 22, 2017 e-mail dialogue among representatives from FCCI, Rockhill, Liberty, Arch, and TDS' defense counsel, the issue of future defense expense was discussed and FCCI informed the group that its policy and its defense obligation would be exhausted with payment of the Bullock settlement. Arch's claim representative responded:

> As for payment of defense costs, it is my understanding that the primary's defense obligation is only extinguished when payment of limits is actually made. Until all underlying limits have been paid out, Arch does not have the obligation to pay for defense of this claim. We remain very much involved and on-board with the defense of this claim and are available as this case moves forward.

8.9     Furthermore, sometime before January 8, 2018, Arch requested that Mr. Merkley provide a budget for the Lawsuit through trial.

8.10    On January 8, 2018, likely in reply to Mr. Merkley's response to her request for a trial budget, the Arch claim representative sent TDS a letter informing TDS of the amount remaining under Arch's policy, stating, "Texas Disposal has a risk of potential uninsured exposure with respect to the Gardner Suit in the event that the jury renders a verdict in trial against Texas Disposal that exceeds the remaining available limit of the Arch Policy." She further wrote:

> While Arch anticipates that the Gardner Suit will continue to be vigorously defended as against Gardner's claims, Arch respectfully suggests that Texas Disposal takes steps as a prudent uninsured to protect its interests. You should feel free to consult an attorney of your choosing and at your own expense to advise you concerning these potential risks.

8.11    On January 9, 2018, TDS' defense counsel advised the insurers and TDS of the expense to be incurred to pay a jury consultant to assist with jury selection, trial strategies and a focus group study, which ultimately occurred on February 10, 2018. In his e-mail, defense counsel states:

> . . . I remain unclear as to which carrier is at the helm. I've only been told that I shouldn't worry about that for now, as it will all be sorted out. Because there is no clarification as to which carrier is responsible for defense expenses, I am sending this to everyone and asking that **if there is any**

**opposition to the expenses set forth below for consulting services, you please let me know today**. Otherwise, we will proceed with signing the contract tomorrow. We will by necessity have to seek reimbursement from you/whichever carrier is responsible. (Emphasis in original.)

Multiple people, including Arch, told TDS' defense counsel that he should not worry about who was "at the helm."

8.12    FCCI, Rockhill and Liberty all responded that same day disclaiming responsibility for the expense because they had or would be exhausting their policies' limits of liability in funding the settlement with the Bullock plaintiffs. Arch never objected to the jury consultant fees.

8.13    However, on January 10, 2018, less than two weeks before the original trial setting of January 22, 2018, Arch's claim representative sent another letter to TDS for the first time informing its insured of its opinion that the Arch Policy did "not obligate Arch to assume or pay for Texas Disposal's defense (and Arch would be within its contractual rights to simply tender the entire defense to Texas Disposal following the completion of the Bullock Settlement)." Arch also suggested a "cost-sharing" agreement with FCCI, Rockhill and Liberty, even though Arch knew the FCCI, Rockhill, and Liberty Policies were about to be exhausted.

8.14    Shortly before the original trial date, the court granted a continuance of the trial until March 19, 2018.

8.15    Accordingly, TDS and its owner had no choice but to mitigate its damages and to make certain its legal interests were protected through trial. The precarious, tense situation forced TDS' owner on his own to financially ensure that the company would receive a strong, competent defense at trial.

8.16    On March 23, 2018, the jury returned a verdict in favor of plaintiff Brandon Gardner, in the amount of $1.1 million in actual damages. This amount is less than the amount

remaining under the Arch Policy after payment of the Bullock settlement, so Arch's policy remains unexhausted. Gardner has since appealed the above verdict.

8.17    In procuring this extremely favorable jury verdict, TDS and its owner paid to defense counsel and appellate counsel approximately $930,805.20 for legal fees and expenses that continue to increase and have not been reimbursed by any insurer. TDS anticipates incurring additional fees in handling post-trial motions, securing entry of the final judgment, and defending TDS on Gardner's appeal of the $1.1 million verdict.

**COUNTS**

**IX.**
**COUNT I – BREACH OF CONTRACT AGAINST FCCI**

9.1    TDS incorporates each and every allegation set forth above.

9.2    TDS fully performed its obligations under the FCCI Policy and paid the required policy premiums.

9.3    Under the FCCI Policy, FCCI had the duty to defend TDS and its employee Weige until "the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements." FCCI exhausted its policy limit in settlement with the Bullock plaintiffs, but that settlement was not consummated until the dismissal was entered on February 21, 2018.

9.4    FCCI breached its contract with TDS because it stopped paying defense expenses in the Lawsuit before February 21, 2018.

9.5    FCCI also breached its contract with TDS because, between the date that FCCI stopped defending and February 21, 2018, it has failed and refused to pay any defense costs and expenses related to Gardner, even though his claims were consolidated with the Bullock plaintiffs and remained in the Lawsuit through February 21, 2018.

9.6     FCCI has refused, and continues to refuse, to reimburse TDS for the defense costs and expenses it has incurred defending all claims in the Lawsuit through February 21, 2018.

9.7     FCCI has breached the FCCI Policy, causing damage to TDS.

## X.
## COUNT II — BREACH OF CONTRACT AGAINST ARCH

10.1     TDS incorporates each and every allegation set forth above.

10.2     TDS fully performed its obligations under the Arch Policy and paid the required policy premiums.

10.3     Under the Arch Policy, Arch had "the right but not the duty to investigate and settle any claim or assume the defense of any suit which in [its] opinion may give rise to payment under this policy." Through its actions, conduct and written correspondence, Arch assumed the defense of the Lawsuit.

10.4     Notwithstanding its assumption of the defense of the Lawsuit, Arch has failed and refused to pay any defense costs and expenses.

10.5     Arch's failure and refusal to pay any defense costs and expenses constitutes a breach of its contract with TDS.

10.6     Arch could only withdraw from the defense of the Lawsuit after its policy limit was exhausted.

10.7     The Arch Policy limit has not yet been exhausted by payment of **loss**, as defined in the Arch Policy. Therefore, Arch's attempt to withdraw from the defense violates the terms of the Arch Policy.

10.8     Arch has breached the Arch Policy, causing damage to TDS.

## XI.
## COUNT III – ATTORNEYS' FEES AND PROMPT PAYMENT OF CLAIMS

11.1     TDS incorporates each and every allegation set forth above.

11.2     TDS was forced to engage legal counsel in order to redress its losses. TDS is entitled to recover its attorneys' fees arising out of these coverage disputes under the Texas Civil Practice & Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8) (statutory basis for recovery of attorneys' fees in breach of contract case).

11.3     Additionally, both Arch and FCCI have violated the Texas Prompt Payment of Claims Act because each has failed to pay defense costs to which TDS is entitled. *See,* sections 542.051 - .061 of the Texas Insurance Code.  Accordingly, both Arch and FCCI are liable for the amount of TDS' claim, interest on the amount of the claim at the rate of 18% per year as damages, and reasonable and necessary attorney's fees. *See,* section 542.060(a) of the Texas Insurance Code.

## XII.
## COUNT IV – DECLARATORY JUDGMENT AGAINST ARCH

12.1     TDS incorporates each and every allegation set forth above.

12.2     Pursuant to 28 U.S.C. §2201(a), TDS seeks a declaration that Arch has a continuing duty to defend TDS until the Lawsuit has been settled or resolved, or until Arch has exhausted its policy limit, neither of which has occurred as of this date.

12.3     In addition, TDS seeks a declaration that Arch's payment of defense expenses falls outside of its limit of liability and does not erode the remaining limit of liability.

12.4     Arch denies that it owes TDS any defense in connection with the Lawsuit, so an actual controversy exists between TDS and Arch for which TDS, as an interested party, seeks these declarations.

## XIII.  JURY DEMAND

13.1    TDS demands a trial by jury.

## XIV.  RELIEF REQUESTED

14.1    TDS respectfully requests judgment against FCCI and Arch as follows:

   a.    An award of actual damages against FCCI for FCCI's breach of the FCCI Policy;

   b.    an award of actual damages against Arch for Arch's breach of the Arch Policy;

   c.    judgment against Arch declaring that Arch has a continuing duty to defend TDS until the Lawsuit has been settled or resolved, or until Arch has exhausted its policy limit;

   d.    judgment against Arch declaring that Arch's obligation to defend TDS in the Lawsuit constitutes a defense outside of the policy limit, such that Arch's payment of defense expenses does not erode the remaining limit of the Arch Policy;

   e.    judgment awarding attorneys' fees incurred herein plus interest on said fees at the highest rate allowed by law from the date of entry of judgment until paid in full;

   f.    total costs of the suit herein including pre-judgment and post-judgment interest at the highest rate allowed by law; and

   g.    for such other and further relief at law and in equity as the Court may deem appropriate.

Respectfully submitted,

By:  /s/ *Beverly B. Godbey*
      Beverly B. Godbey
      State Bar No. 02068600
      beverly@amystewartlaw.com
      **AMY STEWART PC**
      Mockingbird Station
      5307 E. Mockingbird Lane, Suite 425
      Dallas, Texas 75206
      Telephone: (214) 233-7076
      Facsimile: (214) 975-2806

**ATTORNEYS FOR PLAINTIFF**

4812-4707-0061, v. 1